UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

FILED

APR 10 2015

| | |
|---|---|
| QUEST AVIATION, INC., <br><br> Plaintiff, <br><br> vs. <br><br> NATIONAIR INSURANCE AGENCIES, INC., <br><br> Defendant. | 1:14-CV-01025-RAL <br><br><br> OPINION AND ORDER DENYING MOTION TO DISMISS |

Quest Aviation, Inc. (Quest) filed a complaint for declaratory judgment against NationAir Insurance Agencies, Inc. (NationAir) in South Dakota state court. Doc. 1-1 at 13–19. NationAir removed the case to federal district court pursuant to 28 U.S.C. § 1441, asserting diversity jurisdiction under 28 U.S.C. § 1332. Doc. 1. NationAir then filed its Motion to Dismiss, Doc. 7, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Quest opposed the motion to dismiss and requested oral argument on the motion. Doc. 13. This Court finds that Quest has stated a justiciable claim upon which relief may be granted and the circumstances do not justify dismissal of the claim.

I.  FACTS

When ruling on a motion to dismiss for failure to state a claim, a court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). Therefore, the pertinent facts will be taken from what Quest alleges in its complaint.

Quest is a South Dakota Corporation, with its principal place of business in Aberdeen, South Dakota. Doc. 1-1 at 13. Quest provides air charter and other aeronautical services in Aberdeen and Tea, South Dakota. Id. at 13, 16. NationAir is an insurance broker that specializes in procuring aviation insurance for clients. Id. at 14. NationAir's specialized experience in insurance for the aviation industry is valuable, it claims, because business insurance policies generally exclude aviation related losses. Id.

John Worthing (Worthing), an experienced sales executive and director at NationAir, secured two insurance policies for Quest in late 2010 and early 2011. Id. at 14–15. Both policies were underwritten by National Union Fire Insurance Company (National Union). Id. at 15. One policy, entitled "Aviation Policy," had a $3 million per occurrence liability limit. Id. The other policy, an "Aviation Commercial General Liability" policy, had a $20 million per occurrence liability limit. Id. Worthing visited Quest in South Dakota annually to discuss Quest's business and to provide quotes and was aware of Quest's air charter operations. Id. Due to NationAir's representations about its expertise, skill, and knowledge in the aviation insurance field, Quest relied upon NationAir to procure appropriate types and amounts of insurance coverage. Id. Quest believed that the commercial general liability policy would provide coverage for incidents involving aircraft it operated. Id. at 16.

In 2008, Quest began leasing a Cessna 421C (the Cessna) for use in its air charter operations. Id. The Cessna crashed on December 9, 2011, killing the three chartered passengers onboard. Id. at 16–17. The estates of the three passengers filed wrongful death suits against Quest in South Dakota state court. Id. One of the estates has settled its claim against Quest, but two cases are still pending. Id. at 17. The claims for damages in the wrongful death litigation in aggregate exceed $3 million. Id.

Quest submitted claims for coverage under both the Aviation Policy and its commercial general liability policy. Id. In January 2014, National Union informed Quest that the $20 million commercial general liability insurance did not cover the 2011 aircraft crash because of an exclusion in the policy for bodily injury caused by aircraft operated by Quest. Id. According to its complaint, Quest had not been informed of this exclusion by NationAir. Although Quest employees had previously reviewed the $20 million commercial general liability policy, they "did not recognize or understand" that it excluded coverage for incidents involving aircraft operated by Quest. Id. at 16–17. If Quest had known about the aviation exclusion, it would have "taken a different course of action with respect to its operations or its insurance coverage." Id. at 17–18. Because of the exclusion in the commercial general liability policy, Quest is uninsured for any damage awards aggregating more than $3 million relating to the 2011 aircraft crash. Id. National Union is defending Quest and providing coverage for the 2011 aircraft crash under the Aviation Policy, which has a $3 million liability limit.

Quest seeks judgment from this Court declaring that NationAir is liable for damages Quest may pay in the wrongful death litigation to the extent that they exceed $3 million dollars. Quest alleges NationAir breached a fiduciary duty and acted negligently by not advising Quest that the commercial general liability policy it procured would not provide coverage for incidents involving Quest-operated aircraft. Id. at 18–19.

## II. ANALYSIS

NationAir's motion to dismiss is based on the fact that Quest has not been and may never be ordered to pay a judgment that exceeds the $3 million Aviation Policy coverage cap in the wrongful death litigation. NationAir argues that Quest does not have a claim against NationAir unless and until Quest is forced to pay a judgment (or a portion thereof) out of its own pocket in

the wrongful death litigation. Three arguments form the basis of NationAir's motion to dismiss, all sprouting from the current absence of final judgment for damages exceeding $3 million: (1) Quest has not alleged damages, an essential element of the underlying torts that form the basis of this action; (2) the claim is not yet ripe for adjudication; and (3) a declaratory judgment action cannot or should not be used to bring tort claims. Because the second argument concerning ripeness raises a jurisdictional issue, this Court will address the ripeness argument first, followed by the argument that the essential element of damages is lacking, and then the propriety of issuing a declaratory judgment in this case.

### A. Ripeness Argument

NationAir argues that if a claim has been stated, it is not yet ripe for adjudication due to the lack of concrete injury. The federal Declaratory Judgment Act requires that there be an "actual controversy," 28 U.S.C. § 2201, which has been interpreted as merely emphasizing the case and controversy requirement embodied in Article III of the U.S. Constitution, Gopher Oil Co. v. Bunker, 84 F.3d 1047, 1050 (8th Cir. 1996); see also U.S. Const. art. III, § 2. Article III requires that there be "a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941). Just like any other action in federal court, an action for declaratory relief must be ripe for federal jurisdiction to exist. Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 242 (1952); Gopher Oil Co., 84 F.3d at 1050.

Here, NationAir disputes Quest's claim that NationAir breached either its duty as an insurance broker or as a fiduciary in its procurement of Quest's insurance policies. The dispute is based on alleged actions that occurred in 2010 and 2011 that place the parties in adverse legal positions about whether a duty existed and, if so, whether it was breached. This case is factually

developed enough that, even without an exact damage amount, a decision on the matter would not be an advisory opinion based on a hypothetical set of facts. See Pub. Serv. Comm'n of Utah, 344 U.S. at 242–43. Quest faces a legitimate risk of a damage award exceeding the $3 million policy limit in the wrongful death litigation, for which it believes NationAir ultimately should be responsible to pay. Quest and NationAir are in adverse legal positions sufficient to create a case and controversy. See Gopher Oil Co., 84 F.3d at 1051 (finding declaratory judgment action was ripe for adjudication where declaratory judgment plaintiff was defendant in EPA lawsuit to collect reclamation expenses for environment damage allegedly caused by declaratory judgment defendant). This case is an actual controversy upon which this Court may rule without issuing an impermissible advisory opinion.

### B. Essential Element Argument

To survive a motion to dismiss for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard requires that the plaintiff allege "sufficient factual matter," which if true, would "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). While this standard does not require detailed factual allegations, a complaint must contain facts that are more than labels, conclusions, or "formulaic recitation[s] of the elements." Twombly, 550 U.S. at 555. When applying this standard, a court "must accept as true all factual allegations set out in the complaint, and must construe the complaint in the light most favorable to the plaintiff, drawing all inferences in [the plaintiff's] favor." Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006).

5

Federal law allows a party to obtain a judicial declaration of a legal right or relation with or without seeking any other remedy. 28 U.S.C. § 2201. Section 2201 is a procedural device for adjudicating existing rights but it does not alter substantive rights. W. Cas. & Sur. Co. v. Herman, 405 F.2d 121, 124 (8th Cir. 1968); see also Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504–06 (1959) (holding that a party's right to trial by jury and all legal and equitable defenses of underlying substantive law in a declaratory judgment action are preserved). Thus, whether Quest has stated a claim is determined by the underlying substantive legal basis of the action, that is, the claims of negligent procurement and breach of fiduciary duty.

Quest alleges that NationAir breached a fiduciary duty it owed to Quest and that NationAir "negligently failed to advise Quest" that the commercial general liability insurance policy did not cover airplane accidents. Doc. 1-1 at 18. This Court looks to underlying state law, in this case South Dakota law, to define the substantive law of cases brought pursuant to federal diversity jurisdiction. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 72–73, 78 (1938). In order to state a claim for the tort of breach of fiduciary duty, "a plaintiff must prove: (1) that the defendant was acting as plaintiff's fiduciary; (2) that the defendant breached a fiduciary duty to plaintiff; (3) that plaintiff incurred damages; and (4) that the defendant's breach of the fiduciary duty was a cause of plaintiff's damages." Chem-Age Indus., Inc. v. Glover, 652 N.W.2d 756, 772 (S.D. 2002). To state a claim for negligence under South Dakota law, a plaintiff must prove that (1) the defendant owed a duty; (2) the defendant failed to perform that duty; and (3) the plaintiff was injured as a result of that failure. Leslie v. City of Bonesteel, 303 N.W.2d 117, 119 (S.D. 1981). An insurance agent has a duty to a person seeking coverage to use reasonable diligence in procuring "insurance of the kind and with the provisions specified" by the person seeking coverage. Cole v. Wellmark of S.D., 776 N.W.2d 240, 251 (S.D. 2009) (quoting City of

6

Colton v. Schwebach, 557 N.W.2d 769, 771 (S.D. 1978)). When a person seeks a review and recommendation for his or her insurance needs, the insurance agent's duty extends to procuring the type of coverage that the insurance agent recommends. Id.

For purposes of the motion to dismiss, NationAir argues only that Quest cannot show actual injury from any alleged breach of fiduciary duty or negligence because National Union is currently defending Quest in the wrongful death litigation and Quest has not been ordered to pay aggregate judgments in excess of the $3 million Aviation Policy limit of liability. Quest has only alleged that it faces the potential of combined judgments against it in excess of the Aviation Policy limit of liability. See Doc. 1-1 at 17–18; Doc. 13 at 5. If it were certain that Quest will have to pay some amount of damages out of its pocket in the wrongful death litigation, there could be no argument that Quest had failed to state a claim upon which relief could be granted. Because it is not certain that Quest will be found liable in the remaining wrongful death suits, let alone that the aggregate damages will exceed the $3 million limit of liability on the aviation policy, NationAir asserts that there is no injury.

Uncertainty about whether a plaintiff has been injured by the alleged tortfeasor is fatal to a tort claim, but once the fact of injury is certain, uncertainty about the amount of damages is not fatal. Weekley v. Prostrollo, 778 N.W.2d 823, 830 (S.D. 2010). In a negligent procurement action, the injury under South Dakota law is the lack of insurance coverage sought by the plaintiff, see Kobbeman v. Oleson, 574 N.W. 2d 633, 638 (S.D. 1998) ("[I]n failure to procure insurance cases, claims may reasonably arise long before a judgment."), but the measure of the damages owed a plaintiff—the compensation for the injury—"is the amount the insurer would have paid on behalf of the insured had the desired coverage been obtained," id. at 635. Here,

Quest has an injury in not having the extent of coverage it alleges NationAir should have procured, but the measure of the injury is uncertain.

Concerning the wrongful death claims from the Cessna crash, National Union has accepted coverage only under the Aviation Policy with a $3 million limit and has denied coverage under the Commercial General Liability Policy with the $20 million limit purchased by Quest. Quest alleges that it "would have taken a different course of action" had it known at the time of purchase that the commercial general liability policy would not cover situations like the 2011 aircraft accident. In other words, but for the alleged breach of fiduciary duty or negligent procurement, Quest either would not have purchased a General Liability Policy excluding aviation-related incidents, would have sought out coverage with a higher liability limit than $3 million for damages caused by airplane use, or possibly would not have undertaken passenger flights. Thus, Quest is currently exposed to pay any aggregate amount exceeding $3 million and attributes this exposure to NationAir failing to procure the insurance Quest sought. Despite the uncertainty about what amount of damages will fairly compensate Quest for NationAir's alleged breach of duty, one certain measure of damages would be the premiums paid by Quest for a policy that did not provide the coverage it sought. This measure of damages likely would leave Quest dissatisfied, but illustrates the point that the alleged injury is certain with the uncertainty being the amount of compensation allegedly owed. See Kobbeman, 574 N.W.2d at 638 (citing Antal's Rest., Inc. v. Lumbermen's Mut. Cas. Co., 680 A.2d 1386, 1389 (D.C.1996)). Here, the alleged injury is certain—Quest does not have its desired coverage or at least paid premiums for a policy that did not provide the coverage sought—even though the amount of compensation it might be owed for such an injury is not. Thus, Quest has stated a claim for which relief may be granted.

Even if the issue of injury were not certain, § 2201 changes the nature of the injury required, notwithstanding that § 2201 does not alter substantive rights. Just as tort actions require an injury to establish a claim, so do breach of contract actions, see Guthmiller v. Deloitte & Touche, LLP, 699 N.W.2d 493, 498 (S.D. 2005) (listing the elements of a breach of contract claim as (1) an enforceable promise, (2) a breach of the promise, and (3) resulting damages). However, at least one purpose of allowing declaratory relief is to clearly establish rights or relationships *before* damages accrue. Cunningham Bros. v. Bail, 407 F.2d 1165, 1167–68 (7th Cir. 1969); E. Edelmann & Co. v. Triple-A Specialty Co., 88 F.2d 852, 854 (7th Cir. 1937) ("It was the congressional intent to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued."). Thus, in a declaratory judgment action, while the substantive rights remain unaltered, the requirement of actual injury is satisfied by a concrete threat of actual injury. See 10B Charles Alan Wright, et al., Federal Practice & Procedure § 2751, at 456 (3d ed. 1998) ("[Declaratory judgment] gives a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy."); cf. Gopher Oil Co., 84 F.3d at 1051 (holding declaratory judgment action was ripe when plaintiff had pending action against it for environmental cleanup expenses but no final judgment). Declaratory judgment actions are often used by prospective defendants seeking to define their obligations, but they also may be used by prospective plaintiffs to confirm the existence of an obligation. See, e.g., Modern Equip. Co. v. Cont'l W. Ins. Co., 146 F. Supp. 2d 987, 991–92 (S.D. Iowa 2001) (denying motion to dismiss declaratory judgment action brought by insured seeking to confirm insurance coverage); see also Aetna Life Ins. Co. of Hartford Conn. v. Haworth, 300 U.S. 227, 244 (1937) ("[T]he character of

9

the controversy and of the issue to be determined is essentially the same whether it is presented by the insured or by the insurer."). Declaratory relief allows the insured to establish his contractual rights before suffering any injury, that is, before he would be able to assert a claim for breach of contract. And there is nothing in the text of § 2201 that suggests it would operate any differently in the context of an underlying tort action. Therefore, the lack of a monetary injury is not necessarily fatal to a tort claim brought under the declaratory judgment act.

Quest's current exposure to liability exceeding the $3 million Aviation Policy limit of liability is sufficient under South Dakota law to constitute an injury in a declaratory judgment action based on an alleged negligent procurement or breach of fiduciary duty. The final issue is whether this Court ought to entertain a claim for declaratory relief.

## C. Propriety of Declaratory Judgment Argument

NationAir argues that a declaratory judgment action is not the proper procedural avenue for negligence and intentional tort claims, and thus, NationAir argues, this action must be dismissed. Doc. 16 at 4. Although federal courts are courts of limited jurisdiction, a federal court is generally obligated to decide a case when jurisdiction is established. See Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813–19 (1976) (holding an otherwise justiciable case[1] could be dismissed only in "exceptional" circumstances). However, when a case is brought as a declaratory judgment action under § 2201, district courts have greater discretion to dismiss an otherwise justiciable case. Wilton v. Seven Falls Co., 515 U.S. 277, 286

---

[1] In Colorado River, the Supreme Court found that three different categories of the "doctrine of abstention" did not apply to the case before considering whether other considerations justified dismissal. 424 U.S. at 814–17. The three categories of the doctrine of abstention are: (1) when the case presents a federal constitutional issue that might be "mooted or presented in a different posture by a state court determination of pertinent state law," (2) when the case presents difficult questions of state law that will affect policy considerations more important than the case at bar, and (3) when federal jurisdiction is being improperly "invoked for the purpose of restraining state criminal proceedings." Id.

(1995). The permissive language in § 2201—"a court '*may* declare the rights and other legal relations of any interested party'"—distinguishes declaratory judgment actions from other actions. Id. (quoting 28 U.S.C. § 2201).

In a declaratory judgment action, the breadth of a court's discretion depends upon a preliminary determination of whether there is a "parallel" state court proceeding. Scottsdale Ins. Co. v. Detco Indus., 426 F.3d 994, 999 (8th Cir. 2005). When there is a parallel state court proceeding to a federal action for declaratory judgment, a district court has broad discretion to dismiss or stay the federal proceeding. Wilton, 515 U.S. at 290; Scottsdale Ins. Co., 426 F.3d at 997. When there is not a parallel state court proceeding, a district court has less discretion, guided by the balancing of six factors, to dismiss or stay an otherwise justiciable declaratory judgment action. Scottsdale Ins. Co., 426 F.3d at 998. Thus, the next issue is whether the wrongful death litigation is a "parallel" state court proceeding to this case.

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." Cont'l Cas. Co. v. Advance Terrazzo & Tile Co., 462 F.3d 1002, 1006 (8th Cir. 2006) (quoting Scottsdale Ins. Co., 426 F.3d at 998). In this case, Quest and NationAir are litigating the issue of NationAir's liability, if any, to Quest for allegedly breaching a duty owed Quest during the procurement of insurance coverage. In the wrongful death litigation, the estates of the decedents and Quest are litigating the issues of liability and possible damages owed by Quest arising out of the 2011 Cessna crash. NationAir is not a party to the wrongful death litigation, and the proceedings are determining distinct factual issues, although some facts and the damage award in the wrongful death litigation impact this case. This action is not "parallel" to the wrongful death litigation because this case involves different parties and issues from the state wrongful death claims. See id. at 1006; Scottsdale Ins. Co., 426 F.3d at 997. Thus, the six-

factor test adopted by the Eighth Circuit in Scottsdale controls the decision to dismiss or stay the case.

The relevant factors a court must consider when deciding whether to dismiss or stay a declaratory judgment action when there are no parallel state court proceedings are:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying and settling the legal relations in issue; (2) whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the federal proceeding; (3) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (4) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (5) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and (6) whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

Scottsdale Ins. Co., 426 F.3d at 998 (citations and alterations omitted) (adopting a test articulated in Aetna Cas. & Sur. Co. v. Ind-Com. Elec. Co., 139 F.3d 419, 422 (4th Cir. 1998) (per curiam)). These factors do not militate for dismissal of this case.

The first two factors of the Scottsdale Insurance test favor proceeding with the declaratory judgment action. Clarification of NationAir's liability to Quest, if any, through this declaratory judgment action could serve a useful purpose by allowing Quest, in the wrongful death litigation, to know whether it has any recourse for contribution from NationAir above the $3 million from its aviation insurance coverage. A declaratory judgment in this case favoring Quest would allow NationAir to know whether it has an interest in the wrongful death litigation and to have some opportunity, however limited, to protect its interests in the case, such as by voluntarily participating in the settlement discussions. A declaratory judgment favoring

12

NationAir would let Quest know that it will be responsible for any liability not covered by its Aviation Policy. The clarification provided by a declaratory judgment in this case would terminate the uncertainty of liability because a judgment would fully clarify each party's obligations in case a judgment in the wrongful death litigation exceeded the $3 million insurance limit in aggregate. See O'Daniel v. Stroud, 607 F. Supp. 2d 1065, 1069 (D.S.D. 2009) (finding that the measure of damages after an insurance agent breaches a duty to obtain the type of insurance sought is "the amount the insurer would have paid on behalf of the insured had the desired coverage been obtained"); Kobbeman, 574 N.W.2d at 635 (noting that the amount of damages for negligently procuring insurance coverage under South Dakota law is "the amount the insurer would have paid on behalf of the insured had the desired coverage been obtained").

The federalism and judicial efficiency concerns embodied in the next three factors do not militate for dismissal of this case. South Dakota has no strong interest in deciding in state court the issues raised in this declaratory judgment action. This case involves straight-forward application of established tort causes of action without raising novel questions of state law that properly should be answered by state courts. The legal issue in this case—whether NationAir breached a duty to Quest—turns on a different set of facts than the wrongful death litigation, and any overlap in the cases would not cause a duplication of efforts. This case will not cause unnecessary entanglement between the federal and state courts. The issue in this case is NationAir's alleged liability to Quest based on allegedly tortious conduct in procuring insurance policies. This case will not "encompass the same factual determinations" as the wrongful death litigation, which will focus on the circumstances surrounding the Cessna crash. See Scottsdale Ins. Co., 426 F.3d at 999–1000. Furthermore, this case has been removed to federal court, and dismissal of this action in favor of refiling in state court would undermine NationAir's right to

properly remove an action under 28 U.S.C. § 1332 and § 1441. Indeed, neither party is seeking to have this claim litigated in state court, Quest at this point wants to proceed in federal court, and NationAir—the party that removed the case to federal court—wants the action to be dismissed, not deferred in favor of a state court proceeding. Resolution of this case is just as efficient in federal court as it would be in state court.

The final factor likewise favors retention of federal jurisdiction because there is no improper procedural fencing involved in this case. This factor seeks to discourage a defendant's efforts to file a case in another forum in a "race for res judicata" or to undermine a plaintiff's traditional right to choose a forum. See Lexington Ins. Co. v. Integrity Land Title Co., 721 F.3d 958, 972 (8th Cir. 2013). In this case, plaintiff Quest filed the declaratory judgment action, and the case was properly removed by defendant NationAir to federal court. There is no race for res judicata with another proceeding or potential proceeding, and no improper attempt to undermine a plaintiff's choice of forum here. Because none of the six factors required to be considered militate toward dismissing or staying this action, this Court will exercise its jurisdiction and proceed to determine the issues in the case.

### III.  CONCLUSION

Quest Aviation has adequately stated a claim in its declaratory judgment action that meets the constitutional case and controversy requirement. Because none of the factors required to be considered militate toward dismissal of the action, this Court will adjudicate the case. Therefore, for the reasons stated herein, it is

ORDERED that NationAir's Motion to Dismiss, Doc. 7 is DENIED. It is further

ORDERED that Quest's Request for Oral Argument, Doc. 13, is DENIED.

DATED this 10th day of April, 2015.

14

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

15