UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION


FILED
JAN 27 2017

| | |
|---|---|
| QUEST AVIATION, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAIR INSURANCE AGENCIES, INC.,<br><br>Defendant. | 1:14-CV-01025-RAL<br><br>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT |

On December 9, 2011, a Cessna 421C operated by Plaintiff Quest Aviation, Inc. (Quest) crashed near Sioux Falls, killing the pilot and three passengers. Quest filed a complaint against its insurance agent NationAir Insurance Agencies, Inc. (NationAir) in South Dakota state court seeking a declaratory judgment that NationAir was responsible for damages beyond a $3 million liability limit in an Aviation Policy. Doc. 1-1 at 13–19. After NationAir removed the case to federal district court based on diversity jurisdiction, NationAir filed a motion to dismiss for failure to state a claim, asserting that there were no damages and no ripe claims until Quest had to pay more than the policy limit. Doc. 7. This Court denied the motion to dismiss, concluding that Quest had stated a justiciable claim upon which relief may be granted. Doc. 17.

Quest settled the wrongful death claims arising out of the Cessna crash. Quest then filed a Second Amended Complaint containing two claims; Count I alleged a negligence cause of action, and Count II alleged breach of fiduciary duty. Doc. 27. As alleged by Quest, NationAir's conduct constituting negligence and breach of fiduciary duty is the same: "a. failing

1

to advise Quest that the CGL Policy would not provide coverage for an incident involving an aircraft operated by Quest; and/or b. failing to recommend procurement of an insurance policy that provided adequate coverage for an incident involving an aircraft operated by Quest." Doc. 27 at ¶¶ 44, 48. NationAir filed a motion for partial summary judgment seeking summary judgment on the fiduciary duty claim in its entirety and seeking summary judgment on aspects of the negligence claim. Doc. 47. For the reasons explained below, this Court grants NationAir summary judgment on the breach of fiduciary duty claim, but denies summary judgment on the negligence claim.

### I.   Facts in the light most favorable to non-moving party Quest

In deciding a motion for summary judgment, this Court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). This Court, in setting forth the facts in the light most favorable to non-movant Quest, is making no factual findings whatsoever.

Quest is a fixed-based operator (FBO) based in Aberdeen, South Dakota, providing aeronautical services. During the relevant period, those services included hangaring, flight instruction, aircraft rental, charter services, and maintenance and fueling of aircraft. Quest owned and operated a few smaller airplanes, typically with one to three passenger seats, for use for instruction, rental, and charter services. In 2009, Quest entered into an agreement to use a larger plane, a Cessna 421C with six available seats—one for the pilot and five for passengers—as part of Quest's charter services. The dispute in this case arises out of a tragic accident in December of 2011, in which a pilot and three passengers died in a crash of that Cessna.

Quest is indirectly owned by Ronald Rivett.  At the relevant time, Quest was primarily run by Kevin Braun, the executive vice president of Quest.  Braun began working for Quest in 1985 as an aircraft mechanic, became director of maintenance in 1987, and was named executive vice president in 2005.  In that capacity, Braun is primarily responsible for managing day-to-day activities and employment matters for Quest.  Quest at the relevant time employed 12 to 13 employees in Aberdeen, and another 12 or so employees, mainly part-time, in a second location in Tea, South Dakota.  Those employees were mechanics or pilots.

Beginning in approximately 2006, Braun became responsible for obtaining insurance for Quest.  Rivett, as the indirect owner of Quest, asked Braun to consult about certain business operations of Quest with individuals at The Rivett Group (TRG), which is another entity owned indirectly by Rivett.  TRG provided back office assistance, such as accounting, for companies owned by Rivett or his family.  Sarah Hogg is a financial and tax analyst who works for TRG.  Braun asked Hogg to attend meetings with NationAir to discuss insurance issues for Quest, not only because of the financial implications, but also because NationAir acted as an insurance broker for a corporate aircraft owned separately by TRG.

NationAir is an insurance broker specializing in the procurement of aviation insurance on behalf of its clients.  Quest had purchased insurance through NationAir for some 15 years when Braun became responsible for obtaining insurance for Quest in 2006.  John Worthing was the primary contact for Quest at NationAir from 2006 until Quest switched brokers in 2015.  Worthing has worked for NationAir since 1997, specializing in working with clients in the aviation industry.  Worthing has experience as a licensed pilot, plane owner, and former technician at an FBO in Nebraska.  Worthing had more experience with aviation insurance than

either Braun or Hogg, whose experiences with aviation insurance were limited to their work with Quest and TRG respectively.

NationAir, through Worthing, brokered two yearly aviation insurance policies for Quest—an Aviation Policy and a Commercial General Liability (CGL) Policy. NationAir, through Worthing, also brokered a separate Aviation Policy for the corporate plane owned by TRG, which was done in conjunction with securing the policies for Quest. These insurance policies took effect on February 1 of each year.

Typically, more than a month before the policies were to be renewed, an account executive at NationAir would send to Quest a renewal application, with much of the information, including policy limits, filled in. NationAir meanwhile would be soliciting quotes for Quest's Aviation Policy and CGL Policy from various insurers, based on the previous year's coverage and limits. Braun on behalf of Quest supplied any additional or updated information and returned the application to NationAir. NationAir would update that information to the potential insurers once it received the fully completed application from Braun.

In January before the expiration of the policy, Worthing would speak with Quest, either by phone or in person in Aberdeen, about Quest's insurance options and quotes for renewal policies. For the renewal conversation for both the 2009–10 and 2011–12 policy years, Worthing on behalf of NationAir travelled to Aberdeen and met with Braun and Hogg. Worthing toured Quest's facilities and viewed the aircraft and operation while in Aberdeen.

In 2007, Quest acquired a second FBO at Tea and began operating charter and FBO services from that location. NationAir was aware of Quest's acquisition and operation of an FBO in Tea. In late 2008, a company called S&S Aviation LLC (S&S) became interested in purchasing a Cessna 421C for its use and sought to defray the costs of the Cessna by leasing the

Cessna for Quest to use as well. Braun worked with Worthing to obtain quotes to include the Cessna on Quest's insurance. In 2009, Quest and S&S entered into an Aircraft Marketing Agreement that allowed Quest to use the aircraft and, among other things, obliged Quest to maintain liability insurance of $2 million on the Cessna.

On January 15, 2009, Worthing on behalf of NationAir met with Braun and Hogg in Aberdeen to discuss the 2009 insurance renewal. The parties have somewhat different versions of what occurred during this meeting. By January of 2009, Quest contemplated using the Cessna in its business, although it had not finalized the arrangement with S&S. At the time of the 2009 renewal meeting, Quest had a $2 million Aviation Policy limit of liability and a $20 million CGL Policy limit of liability with National Union Fire Insurance Company of Pittsburgh (National Union), which is an affiliate of AIG Insurance. Either at the renewal meeting or sometime afterwards, Worthing presented quotes for a $2 million liability limit on aircraft and a separate $5 million liability limit on the Cessna. The quote for a $2 million liability limit for the Cessna was from an AIG entity, and the quote for the $5 million liability limit was from W. Brown & Associates, although there is some dispute over whether that was a "hard quote" or something else. Based upon the extra training required, higher premiums, and the fact that Quest was currently insured by an AIG company and wanted to keep its policies together, Quest declined the $5 million Aviation Policy quote and opted for the $2 million Aviation Policy coverage for the Cessna and other aircraft, together with the CGL Policy with a $20 million liability limit, as it had for previous years.

The addition of the Cessna in Tea changed Quest's charter business by allowing Quest to fly more passengers in a single charter, and in more inclement weather. Quest had a noticeable increase in business in 2010 as a result.

Prior to the 2011 insurance renewal meeting, Braun had informed Worthing that Quest was allowing another insurance broker, Avsurance Corporation, to obtain quotes for Quest. Quest had invited Avsurance to bid on Quest's business in an effort to ensure that it was getting a good price for insurance coverage. Avsurance quoted the same limits NationAir had on the Aviation Policy, which included a $2 million liability limit for aircraft including the Cessna. Avsurance did this because Quest supplied Avsurance the same application that was partially completed by NationAir, including the same policy limits from the previous year.

On January 18, 2011, Worthing on behalf of NationAir travelled to Aberdeen for the annual insurance renewal meeting with Braun and Hogg. The parties differ somewhat over what was said at the 2011 renewal meeting. Worthing recalled that Quest wanted NationAir to "match the quote" of Avsurance, and that the 2011 renewal meeting was brief. Braun and Hogg remember the meeting being longer and Quest's request being different. Hogg recalled asking Worthing if the $2 million Aviation Policy coverage was adequate based on the increased number of passengers. According to Quest witnesses, Worthing talked about the $20 million CGL Policy covering maintenance issues and protecting Quest if there was a plane crash caused by faulty maintenance. In actuality, the CGL Policy excluded coverage for claims for bodily injury arising from aircraft owned or operated by Quest. This provision—known as the "owned or operated exclusion"—meant that there was no circumstance in which the CGL Policy would cover damages caused by a Cessna crash while Quest was using it for charter purposes. According to Braun and Hogg, Worthing left Quest with the belief that Quest not only had a $2 million liability limit under the Aviation Policy if the Cessna were to crash, but also had an additional $20 million limit under the CGL Policy if any such crash was due to a maintenance issue. Quest now contends that if it knew that its maximum coverage in the event of a crash of

the Cessna used for charter services was $2 million under the Aviation Policy, it would have made different decisions either about its insurance coverage or its use of the Cessna in the charter business.

NationAir managed to match Avsurance's quote, thereby lowering Quest's premium payment below the original quote it had received. The renewal on February 1, 2011, was for an Aviation Policy with a $2 million limit and a CGL Policy with a $20 million limit, both with National Union, an AIG affiliated company.

In May of 2011, the hull value of the Cessna increased as a result of a new paint job. At the request of Quest, through NationAir, National Union increased the hull value for property damage coverage from $400,000 to $500,000. For reasons not clear in the record, National Union also increased the liability limits on the Cessna to $3 million under the Aviation Policy. Quest believes that Worthing improperly took credit for the increased liability limit, although Worthing now disclaims having taken such credit.

On December 9, 2011, the Cessna crashed soon after takeoff in Sioux Falls, killing three passengers and the pilot. The estates of the passengers sued Quest for wrongful death. Quest now has settled all claims, but the amount paid exceeds the $3 million liability limit for the Cessna. National Union honored the $3 million liability limit when it paid its part of the settlements for the lawsuits resulting from the December 9, 2011 accident. National Union, the AIG entity with both the $3 million Aviation Policy and the $20 million CGL Policy, denied additional coverage based on the "owned and operated exclusion" provision in the CGL Policy.

The National Transportation Safety Board (NTSB) investigated the cause of the plane crash and issued a report in 2013. The report determined the "probable cause(s) of [the] accident" related to actions by the pilot. Quest does not concede that "pilot error" alone is the

cause of the plane crash. Quest notes that preparation and maintenance of the Cessna, as well as the pilot's response to an in-flight emergency, were issues in the wrongful death lawsuits, and that there was an allegation that the pilot failed to secure the oil cap on the left engine of the plane after checking and filling the oil, which led to a fire in the left engine. Quest views the possible failure to secure the oil cap as a maintenance issue.

After the Cessna crash, Worthing allegedly mistakenly confirmed to Quest that the CGL Policy with its $20 million limits would provide coverage for the accident if it was found that the aircraft had experienced maintenance issues. Quest maintains that NationAir never informed it that the CGL Policy contained an exclusion for owned or operated aircraft, and that if it had known of the exclusion, it would not have incurred the liability for the gap between the $3 million Aviation Policy limit on the Cessna and the amount it ultimately paid to settle lawsuits that arose out of the deaths of the three passengers.

## II.  Discussion

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322. The non-moving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Id. at 324. The non-moving party may not, however, merely rest upon allegations or denials in its pleadings, but must come forward with specific facts showing that a genuine issue for trial exists. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

### B. Count I – Negligence Claim

Quest's Second Amended Complaint alleges in Count I negligence, claiming that NationAir had a duty to Quest in providing insurance coverage advice and recommendations and that NationAir breached its duty to Quest by "a. failing to advise Quest that the CGL Policy would not provide coverage for an incident involving an aircraft operated by Quest; and/or b. failing to recommend procurement of an insurance policy that provided adequate coverage for an incident involving an aircraft operated by Quest." Doc. 27 at ¶¶ 43–44. NationAir seeks partial summary judgment on the negligence claim, "except for the claim based upon the Aviation Policy Limits Breach." Doc. 47 at 1. To make this argument, NationAir maintains that Quest must present expert testimony to support a claim for breach of the standard of care by a professional, citing Luther v. City of Winner, 674 N.W.2d 339, 344 (S.D. 2004). NationAir then attacks three of the four opinions of Quest's expert, Bennet Bibel, who opined that NationAir breached the applicable standard of care in four ways:

(1) NationAir failed to recommend that Quest purchase more than $2 million in the Aviation Policy ("Aviation Policy Limits Breach");

(2) NationAir failed to advise Quest of the existence and effect of the owned or operated exclusion in the CGL Policy ("Owned and Operated Exclusion Breach");

(3) Worthing wrongfully took credit for getting the Aviation Policy limit increase from $2 million to $3 million ("Credit for Increased Limits Breach"); and

(4) Worthing breached the standard of care by submitting an updated quote in 2011 because the implication to the insured was that he provided his best quote in the initial quote but he was able to provide a better quote in response to competition by AvInsure [sic] ("Submitting Updated Quote Breach").

Doc. 48 at 15. NationAir concedes that the first opinion called "Aviation Policy Limits Breach" involves a genuine issue of material fact on the negligence claim. NationAir argues that the

9

second opinion called "Owned and Operated Exclusion Breach" does not involve a jury issue because there is no coverage under the CGL Policy and it is speculative as to how Quest could have structured its business any differently had it been aware of the "owned and operated" exclusion in the CGL Policy. Doc. 48 at 16. NationAir argues that the third and fourth opinions—involving "Credit for Increased Limits Breach" and "Submitting Updated Quote Breach"—are not breaches of the standard of care and involve no damage to Quest. Doc. 48 at 19. Quest resists summary judgment. Doc. 52.

In this diversity jurisdiction case, South Dakota law governs substantive legal issues. Under South Dakota law, to prevail in a suit based on negligence, "a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury." Johnson v. Hayman & Assocs., Inc., 867 N.W.2d 698, 702 (S.D. 2015) (quoting Hendrix v. Schulte, 736 N.W.2d 845, 847 (S.D. 2007)). Under South Dakota law, the existence of the duty in the first place is a question of law. Trammell v Prairie States Ins. Co., 473 N.W.2d 460, 462 (S.D. 1991).

South Dakota case law has long recognized a duty that an insurance agent owes to a customer. "An insurance agent has a duty to a potential insured to 'procur[e] insurance of the kind and with the provisions specified by the insured.'" Cole v. Wellmark of S.D., Inc., 776 N.W.2d 240, 251 (S.D. 2009) (alteration in original) (quoting City of Colton v. Schwebach, 557 N.W.2d 769, 771 (S.D. 1997)) (citing Fleming v. Torrey, 273 N.W.2d 169, 170 (S.D. 1978)); see also O'Daniel v. NAU Country Ins. Co., No. 05-5089-KES, 2007 WL 4568991, at *5 (D.S.D. Dec. 21, 2007); Rumpza v. Larsen, 551 N.W.2d 810, 813 (S.D. 1996). The duty of an insurance agent asked to procure a particular type of insurance "is to use reasonable diligence to get the insurance specified, or to seasonably notify the potential insured of the agent's inability to do so." Cole, 776 N.W.2d at 251 (citing Feldmeyer v. Engelhart, 222 N.W. 598, 599 (S.D. 1928)). An

agent also has "a duty to obey [a] client's instructions in good faith and with reasonable professional skill." City of Colton, 557 N.W.2d at 771 (quoting Trammell, 473 N.W.2d at 462). However, an insurance agent has "no duty to go beyond this standard and ask [a] [client] further questions if [the] [client] appeared clear" about what insurance was desired. Id. (second and fourth alterations in original) (quoting Trammell, 473 N.W.2d at 462); see also Rumpza, 551 N.W.2d at 813 ("Although the Trammell court recognized the duty to obey the insured's instructions in good faith and with reasonable professional skill, it found no duty to exceed that standard and inquire further whether the insured was clear about what he wanted."). The Supreme Court of South Dakota has approved a jury instruction on an insurance agent's duty as follows:

> An agent who holds himself out as being qualified to procure insurance is required to exercise the particular skill reasonable to be expected of one in that occupation, and to have adequate knowledge as to the different companies and the variety of terms and coverage available with respect to the insurance involved.

Moore v. Kluthe & Lane Ins. Agency, Inc., 234 N.W.2d 260, 265 & n.2 (S.D. 1975). As discussed further below, the Supreme Court of South Dakota has never recognized an insurance agent to have a greater fiduciary-type duty to an insured. See Cole, 776 N.W.2d at 253.

There is a causation requirement in any negligence case. In the context of a claim against an insurance agent, "causation may be proven by showing that if the client had been properly informed, coverage could have been obtained elsewhere or that the client could have avoided or reduced the risk." O'Daniel, 2007 WL 4568991, at *5; see also Bell v. O'Leary, 744 F.2d 1370 (8th Cir. 1984) (applying similar standard in case involving Missouri law).

NationAir does not argue that it had no duty to Quest, and NationAir does not seek summary judgment on Quest's claim of an "Aviation Policy Limits Breach" by not recommending the purchase of more than $2 million in the Aviation Policy. The only other basis

11

alleged in the Second Amended Complaint for negligence is the failure to advise Quest that the CGL Policy would not provide coverage for an incident involving an aircraft operated by Quest, which the parties call the "Owned and Operated Exclusion Breach." Doc. 27 at ¶ 44. There exist genuine issues of material fact on what, if any, effect there would have been on Quest if it had known that the $20 million CGL Policy limits could never apply to a crash of the Cessna while chartered, even if the crash were caused by a maintenance issue. Quest has presented some evidence that it might have made different decisions if it had known that the $20 million CGL Policy would never provide coverage for any such crash involving the Cessna. Quest maintains that it may have purchased more coverage in the Aviation Policy or made a business decision to forego chartered flights using the Cessna. Viewing the facts in the light most favorable to non-movant Quest, as this Court must at this stage, there is enough evidence that NationAir misinformed Quest on whether the $20 million CGL Policy could apply to a crash of the Cessna caused by a maintenance issue, and whether that misinformation caused Quest to forego seeking higher limits in the Aviation Policy or to otherwise avoid the risk. See O'Daniel, 2007 WL 4568991, at *5.

The two remaining opinions expressed by Quest's expert Bibel—"Credit for Increased Limits Breach" and "Submitting Updated Quote Breach"—do not independently support a claim of negligence. There is no evidence that any such malfeasance caused any damage to Quest. Indeed, the increase in the Aviation Policy limit and the reduction in the amount of the insurance premiums both benefited Quest. Quest does not appear to argue that these additional two bases support some negligence claim; the Second Amended Complaint does not allege that Quest was negligent in either of these two ways. Although it is inappropriate to refer to these matters as "breaches" of any duty, circumstances surrounding how the limit of insurance was increased to

$3 million and statements made in reference to that, as well as the circumstances surrounding the quote for insurance in 2011, may be relevant at trial. In brief, Quest's two claims for negligence contained in the Second Amended Complaint survive summary judgment.

### C. Count II - Breach of Fiduciary Duty Claim

Quest's Second Amended Complaint alleges in Count II breach of fiduciary duty, claiming that NationAir's same conduct that was negligence supports a breach of fiduciary duty. As stated above, the Supreme Court of South Dakota has never recognized a breach of fiduciary duty claim against an insurance agent. In the cases discussing the duty owed by an insurance agent to a customer, there is no hint of the duty being fiduciary in nature. See Cole, 776 N.W.2d at 251; City of Colton, 557 N.W.2d at 771; Rumpza, 551 N.W.2d at 813; Trammell, 473 N.W.2d at 462; Moore, 234 N.W.2d at 265. The Supreme Court of South Dakota indeed has refused to impose a fiduciary duty on insurance agents who solicit applications for insurance. Cole, 776 N.W.2d at 253–54.

The question of whether a fiduciary duty exists is an issue of law for the court. Cole, 776 N.W.2d at 253; Ward v. Lange, 553 N.W.2d 246, 250 (S.D. 1996); High Plains Genetics Research, Inc. v. J.K. Mill-Iron Ranch, 535 N.W.2d 839, 842 (S.D. 1995). A fiduciary relationship is founded on a "peculiar confidence" involving a situation where a fiduciary has a "duty to act primarily for the benefit" of the other. Ward, 553 N.W.2d at 250 (quoting High Plains Genetics, 535 N.W.2d at 842; Garrett v. BankWest, Inc., 459 N.W.2d 833, 839 (S.D. 1990)). "South Dakota law reflects that most commercial or business relationships do not rise to the level of a fiduciary relationship when the parties are dealing over an arms-length transaction." Cole, 776 N.W.2d at 254 (citing High Plains Genetics, 535 N.W.2d at 842). "The law will imply such duties only where one party to a relationship is unable to fully protect its

interests and the unprotected party has placed its trust and confidence in the other." Taggart v. Ford Motor Credit Co., 462 N.W.2d 493, 500 (S.D. 1990). To establish a fiduciary duty, three things must exist: 1) the plaintiff must repose "faith, confidence, and trust" in the defendant; 2) the plaintiff must be in a position of "inequality, dependence, weakness, or lack of knowledge;" and 3) the defendant must exercise "dominion, control or influence" over the plaintiff's affairs. Chem-Age Indus., Inc. v. Glover, 652 N.W.2d 756, 772 (S.D. 2002) (quoting Garrett, 459 N.W.2d at 838). "Fiduciary relationships juxtapose trust and dependence on one side with dominance and influence on the other." High Plains Genetics, 535 N.W.2d at 842.

Quest argues that NationAir and its agent Worthing had both influence over Quest's affairs and greater knowledge of insurance matters, and that Quest reposed faith, confidence, and trust in NationAir and its agent Worthing. Doc. 52 at 33–34. In nearly any purchase of insurance, a customer can assert that the agent has both greater knowledge of insurance matters and influence over the customer's affairs, and that the customer reposed faith, confidence, and trust in the agent. The Supreme Court of South Dakota considered these circumstances decades ago in setting the duty in negligence that insurance agents have to their customers. See Moore, 234 N.W.2d at 265 (noting the superior knowledge of insurance agents and the disadvantage of customers in understanding, but setting negligence standard). Much more recently, in 2009, the Supreme Court of South Dakota considered the grant of summary judgment for an insurance agent on a fiduciary duty claim. Cole, 776 N.W.2d at 253–54. In Cole, the plaintiffs claimed that an agent assisting in obtaining health insurance had breached a fiduciary duty by, among other things, accepting a premium check and having them sign an authorization for electronically deducted premiums, and then telling them they were "all set" and "good to go." Id. at 244. The insurer rejected the insurance application for the plaintiffs' failure to sign riders. Id. In

affirming summary judgment on the breach of fiduciary duty claim, the Supreme Court of South Dakota considered there to be an arms-length transaction for the purchase of the insurance involved in Cole, in part because the plaintiffs had researched and reviewed other policies, determined those policies to be too expensive, and demonstrated no "weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions." Id. at 254 (quoting Garrett, 459 N.W.2d at 838).

Similar to the circumstances in Cole, Quest is a commercial business that has operated an FBO for more than a decade. Hogg, a CPA, and Braun, an executive with Quest, participated in annual meetings concerning the Aviation Policy and CGL Policy renewals. Quest sought out an alternative quote for coverage from another agent, Avsurance. Quest did not demonstrate any "weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other condition" such that NationAir and Worthing had some advantage over it. NationAir did not exercise "dominion, control, or influence" over the business operations of Quest in the sense necessary to take on a fiduciary duty. Although Quest may have reposed "faith, confidence, and trust" in NationAir in helping it make insurance decisions, Quest's placement of trust and confidence in NationAir does not suffice to create a fiduciary duty. As the Supreme Court of South Dakota stated:

> One party cannot transform a business relationship into one which is fiduciary in nature merely by placing trust and confidence in the other party. There must be additional circumstances, or a relationship that induces the trusting party to relax the care and vigilance which he would ordinarily exercise for his own protection.

Ainsworth v. First Bank of S.D., 472 N.W.2d 786, 788 (S.D. 1991). Quest's remedy for being allegedly misinformed by NationAir as to whether the CGL Policy covered crashes due to maintenance issues and whether coverage under the Aviation Policy was sufficient lies under

15

South Dakota law in an action for negligence, not for breach of fiduciary duty. Therefore, NationAir is entitled to summary judgment on Count II of the Second Amended Complaint.

### III. Conclusion

For the reasons contained above, it is hereby

ORDERED that Defendant's Motion for Partial Summary Judgment, Doc. 47, is denied as to the two theories of negligence contained in Count I of the Second Amended Complaint. It is further

ORDERED that Defendant's Motion for Partial Summary Judgment, Doc. 47, is granted with respect to Count II – Breach of Fiduciary Duty contained in the Second Amended Complaint.

DATED this 27th day of January, 2017.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE